## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SEASCAPE DEVELOPMENT, LLC, ) <br> a Hawaii limited liability company; ) <br> BANYAN TRIMONT PROPERTIES, ) <br> LLC, a Hawaii limited liability ) <br> company, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> FAIRWAY CAPITAL, LLC, a ) <br> Nevada limited liability company, ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL NO. 10-00301 JMS/LEK <br><br> ORDER DENYING PLAINTIFFS' <br> MOTION FOR SUMMARY <br> JUDGMENT AND DENYING <br> DEFENDANT'S CROSS-MOTION <br> FOR SUMMARY JUDGMENT |

### ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I. <u>INTRODUCTION</u>

This breach of contract action concerns a $7.2 million loan extended by Defendant Fairway Capital, LLC ("Fairway") to Plaintiff Seascape Development, LLC ("Seascape") and secured by a mortgage on real property in Kailua-Kona, Hawaii. On March 14, 2008, Seascape and Fairway entered into an agreement (the "Seascape Letter Agreement") to settle the debt and release the mortgage. As a result of the Seascape Letter Agreement, Seascape contends that the debt has been satisfied and the mortgage should be released. On May 29, 2009,

Seascape transferred one of the lots secured by the mortgage to Plaintiff Banyan Trimont Properties, LLC ("Banyan").

Fairway contends, however, that the Seascape Letter Agreement was ineffective and that the debt has not been settled.  Fairway further contends that Seascape breached the terms of the mortgage by transferring the property to Banyan.  On March 18, 2010, Fairway sent Seascape and Banyan (collectively, "Plaintiffs") a Notice of Default.  Thereafter, Fairway sent Plaintiffs a Notice of Intent to Foreclose.

On May 27, 2010, Plaintiffs filed the present action to enforce the Seascape Letter Agreement and prevent foreclosure.  On June 14, 2010, Plaintiffs filed a Motion for Summary Judgment ("Plaintiffs' Motion").  On June 28, 2010, Fairway filed a Cross-Motion for Summary Judgment ("Fairway's Motion").  The parties contend that summary judgment is appropriate based on the terms of various agreements presented to the court, including the Seascape Letter Agreement.

Based on the following, the court DENIES Plaintiffs' Motion and DENIES Fairway's Motion.

///

///

## II. <u>BACKGROUND</u>

### A.     The Seascape Loan

Seascape, in the business of acquiring and developing real property, Stevens June 14, 2010 Decl. ¶ 5, owns five lots of real property on the Big Island and the development rights to four of these lots.[1]   Stevens July 9, 2010 Decl. ¶ 11(h).  Seascape is controlled by John Stevens ("Stevens"), who has developed resorts and residences in Hawaii since 1996.  *Id.* ¶ 2.  In financing his property development projects, Stevens has repeatedly borrowed money from Bernie Van Maren and entities controlled by Van Maren (collectively, "Van Maren"), including Fairway.  *Id.* ¶¶ 7-9.  Since 1997, Van Maren has made approximately ten to fifteen loans to Stevens or entities controlled by Stevens (also, "Stevens") for amounts ranging from two to ten million dollars.  *Id.* ¶¶ 9, 10.

On November 29, 2007, Fairway loaned Seascape $7.2 million (the "November 29 Loan").  Stevens June 14, 2010 Decl. ¶ 7; Van Maren June 25, 2010 Decl. Ex. C.  Fairway and Seascape executed both a promissory note (the "November 29 Note"), Van Maren June 25 Decl. Ex. B, and a loan agreement, *id.* Ex. C.  In conjunction with the November 29 Loan, Stevens and Stevens-related

---

[1]  The lots apparently bear Tax Map Key Nos. (3) 7-3-010:051, 052, 053, and 054. Stevens June 14, 2010 Decl. Ex. 2 at 2.  In other documents submitted to the court, however, the lots bear different Tax Map Key Nos.  *See*, *e.g.*, Van Maren June 25, 2010 Decl. Ex. C at 34-43. In any event, the present Motions do not depend on the exact lots at issue.

entities also entered into a Guaranty in favor of Fairway (the November 29 Guaranty"). *Id.* Ex. E. By the terms of the November 29 Guaranty, Stevens and Stevens-related entities (collectively, the "Guarantors") guaranteed payment to Fairway on the November 29 Loan. *Id.* Ex. E at 2.

The November 29 Guaranty also provided for an additional guaranty by the Guarantors to Fairway related to Sonny Ventures, LLC -- another real estate development project controlled by Stevens and indebted to a Van Maren entity, CTI Reno 100 (Morgan), LLC ("CTI Reno"). *Id.*; Stevens July 9, 2010 Decl. ¶ 14. Regarding Sonny Ventures, the November 29 Guaranty provides:

> [E]ach Guarantor unconditionally, irrevocably and jointly and severally with each other Guarantor, guarantees to [Fairway] the full and timely payment by [Seascape] and each Guarantor to [CTI Reno] of all of [Seascape's] and each Guarantor's respective Limited Preferential Distributional Interest pursuant to Paragraph 4 of that certain First Amendment to Amended and Restated Operating Agreement of Sonny Ventures, LLC, dated as of March 8, 2007.

Van Maren June 25, 2010 Decl. Ex. E at 2. Paragraph 4 of the First Amendment to Amended and Restated Operating Agreement of Sonny Ventures, LLC (the "Amended Sonny Ventures Operating Agreement") provides that CTI Reno is entitled to "all Distributions and other payments" arising from Sonny Ventures, LLC. *Id.* Ex. EE at 3.

On November 29, 2007, Fairway and Seascape executed a mortgage (the "December 3 Mortgage"), which was recorded on December 3, 2007. Stevens June 14, 2010 Decl. ¶¶ 7, 8, 14; *Id*. Ex. 1 at 2, 29-38.[2] The December 3 Mortgage provides that in the event Seascape shall sell, convey, or otherwise encumber Lots 51, 52, 53, and 54, "then the entire balance of the Indebtedness[] shall become immediately due and payable at the option of [Fairway]." *Id*. Ex. 1 at 9.

The December 3 Mortgage also secured Seascape's "payment of the Indebtedness" and "payment (with interest provided) and performance . . . of the Obligations." *Id*. Ex. 1 at 2. The Mortgage defines Indebtedness and Obligations:

> <u>Indebtedness</u>: The principal of and all other amounts, payments and premiums due under the Note . . . and all other indebtedness of [Seascape] to [Fairway] and additional advances under, evidenced by and/or secured by the Loan Documents, plus interest on all such amounts.
> . . .
> <u>Obligations</u>: Any and all of the covenants, promises and other obligations (including, without limitations, the Indebtedness) made or owing by [Seascape] or due to [Fairway] under and/or as set forth in the Loan Documents and all of the covenants, promises and other obligations made or owing by [Seascape] to each and every other Person relating to the Property, provided that when the Indebtedness has been repaid the obligations will not be deemed to include any contingent claims (e.g.

---

[2] Exhibit 1 is numbered in some places, but not in others. As with other unnumbered exhibits, the court counts the exhibit's pages sequentially.

5

indemnity).

*Id*. Ex. 1 at 3, 4.  The Mortgage defines the Loan Documents as "[t]he Note, this

Mortgage, the Guarantee, the Loan Agreement and all other documents,

evidencing, securing or relating to the Loan, the payment of the Indebtedness or

the performance of the Obligations."  *Id*. Ex. 1 at 4.

**B.     The Seascape Letter Agreement**

On March 14, 2008, Seascape and Fairway entered into the Seascape

Letter Agreement, which provided for Seascape's repayment of the November 29

Loan in exchange for release of the December 3 Mortgage, among other things.  *Id*.

Ex. 2 at 1.  According to the Seascape Letter Agreement, Seascape sought to repay

the November 29 Loan because Seascape had found a new capitol investor.  *Id*.

The Seascape Letter Agreement provides:

> This letter will confirm the agreements and
> understanding reached between [Fairway] and [Seascape]
> regarding Seascape's repayment to Fairway of the
> outstanding principal and accrued but unpaid interest of
> the loan made by Fairway to Seascape and evidenced by
> that certain Secured Promissory Note dated November
> 29, 2007 ("Note") in the original principal amount of
> Seven Million Two Hundred Thousand and No/100
> Dollars ($7,200,000.00).

*Id*.  The Seascape Letter Agreement sets forth the outstanding balance of the

November 29 Loan ($5,932,828.25) and the costs and expenses incurred by

6

Fairway in connection with the November 29 Loan ($13,000).  The Seascape

Letter Agreement then states, "[a]ccordingly, to repay the Loan in full on March

14, 2008, Seascape must pay . . . $5,945,828.25[]."  *Id*. at 2.

The Seascape Letter Agreement requires Fairway to provide three

forms of consideration.

> In consideration of Seascape's payment of all outstanding
> principal and interested owed under the Note as
> aforesaid, Fairway shall execute, among other things, (1)
> a UCC Financing Statement Amendment to terminate the
> UCC Financing Statement in favor of Fairway as secured
> party recorded in the Bureau of Conveyances of the State
> of Hawaii ("Bureau") as Document No. 2007-208967, (2)
> a Release of Mortgage in connection with its Mortgage,
> Assignment of Rents, Security Agreement and Fixture
> Filing which encumbers certain real property located in
> Kailua-Kona, Hawaii bearing Tax Map Key Nos. (3) 7-3-
> 010:052, 053 and 054 recorded in said Bureau as
> Document No. 2007-208966, and (3) a Release of
> Mortgage in connection with its unrecorded Mortgage,
> Assignment of Rents, Security Agreement and Fixture
> Filing covering certain real property located in Kailua-
> Kona, Hawaii bearing Tax Map Key No. (3) 7-3-
> 010:051.

*Id*.  The Seascape Letter Agreement further provides, "[a]lso, in consideration of

the payment herein, Fairway and Strand Capital[3] shall release any and all security

interests, options to purchase and other interests in Seascape Development, LLC,

---

[3]  Strand Capital is a Van Maren-controlled entity.  Stevens July 9, 2010 Decl. ¶ 8.

AAA Development, LLC, and Aloha Aina Homes LLC." *Id.*

Both Fairway and Seascape signed the Seascape Letter Agreement, *id.* at 3, 6, and on March 17 and 19, 2008, Seascape paid Fairway $ 5,963,626.74 -- the amount stated in the Seascape Letter Agreement plus three days of interest. Stevens June 14, 2010 Decl. ¶¶ 10-12; Deeley June 14, 2010 Decl. Ex. 6.  On March 19, 2008, Fairway's attorneys acknowledged receipt of payment from Seascape.  Deeley June 14, 2010 Decl. Ex. 4.  That same day, Fairway's attorneys prepared a UCC Termination form and mortgage release forms.  *Id.* Ex. 5. Seascape reviewed and approved the releases.  *Id.* ¶ 5.  Fairway did not, however, sign or record the releases.  *Id.*

## C.    Additional Letter Agreements

On March 14, 2008 -- the same day the Seascape Letter Agreement was signed -- companies controlled by Stevens and Van Maren entered into two additional letter agreements (the "Sonny Ventures Letter Agreement" and the "Wattie Green Letter Agreement").  Van Maren June 25, 2010 Decl. Exs. G, I. The parties now dispute whether the Seascape Letter Agreement, Sonny Ventures Letter Agreement, and Wattie Green Letter Agreement (collectively, the "March 14 Letters") represented three separate agreements or one integrated agreement. Stevens stated that "[n]one of these agreements is related to any other agreement

other than by the fact that each is between a Stevens entity and a Van Maren entity."  Stevens July 9, 2010 Decl. ¶ 23.  Van Maren stated, however, that "[t]he parties intended that all three (3) written agreements . . . would constitute one single agreement among the parties."  Van Maren June 25, 2010 Decl. ¶ 11.  In support of his statement, Van Maren points to a March 12, 2008 email that he sent to Stevens and others discussing the terms of the March 14 Letters collectively.  *Id.* Ex. X-1.[4]

In the Sonny Ventures Letter Agreement, CTI Reno agreed to release

---

[4]  Van Maren's March 12, 2008 email states:
> John is looking for deed releases, payoff statements, escrow instructions etc for the Seascape and Wattie Green collateral.  The above are the 2 amounts to be paid plus per diem.  Please coordinate with William Deeley and John Stevens.
> In addition we are to receive:
>
> 1)      A guarantee from John Stevens personally limited to $1,000,000.00
> 2)      A collateral assignment of the $1,500,000 D-Bar limited partnership unit.
>
> 1) and 2) are to be pledged for or to guarantee the return of CTI Reno loan principal plus 5% interest from the liquidation of Snny [sic] Ventures/Lokahi Makai asserts/loan collateral.  At the same time we are going to give John the option of paying us the lesser of[:] $2,500,000 or, the actual shortfall amount (shortfall in returning CTI loan principal and accrued 5% interest) upon the earlier of[:] full liquidation of Sonny Ventures/Lokahi Makai assets (establishing the shortfall), or March 31 2009.
>
> [] Please get this done asap.

Van Maren June 25, 2010 Decl. Ex. X-1.

Stevens from his guaranty to pay CTI Reno preferential limited distributional

interest in Sonny Ventures in exchange for (1) a guaranty by Stevens Family

Limited Partnership LLLP ("Stevens Family LLLP") to CTI Reno of the return on

its investment in Sonny Ventures plus a five percent return per annum and (2) a

pledge by Stevens and the Stevens Family LLLP of their membership interest for

CTI Reno in Oak Canyon Ranch LLC as collateral security for repayment to CTI

Reno.  *Id*. Ex. G at 2.  The Sonny Ventures Letter Agreement further provided:

> Within ten (10) calendar days after the execution of this
> letter agreement, the parties shall prepare, execute and
> deliver revised guaranty, pledge and related documents to
> reflect the foregoing agreements and such other terms in
> form and content approved by [CTI Reno]; *provided,*
> *however*, the same shall not delay the payments to be
> made pursuant to the (a) letter agreement between
> Fairway Capital LLC and Seascape Development, LLC,
> and (b) letter agreement between Sonny Ventures, LLC
> and Seascape Group LLC, a Hawaii limited liablity
> company both of even date herewith.

*Id*. Ex. G at 2 (emphasis in original).  Both Stevens and CTI Reno signed the

Sonny Ventures Letter Agreement.  *Id*. Ex G at 3, 4.  The parties also signed the

Wattie Green Letter Agreement, the terms of which are not at issue here.

On November 18, 2008, CTI Reno sent Stevens a notice of default

regarding Sonny Ventures (the "Sonny Ventures Notice of Default").  *Id*. Ex. J at

1-2.  CTI Reno notified Stevens that he was in default based on Stevens' failure to

execute a Revised Guaranty and Pledge (the "Revised Sonny Ventures Guaranty").

*Id.*  The Sonny Ventures Notice of Default stated that "[CTI Reno] intends to

pursue all of its rights under the [November 29 Guaranty] against [Stevens]

personally and the other parties thereto."  *Id.* Ex. J at 2.  According to Van Maren,

the Sonny Ventures-related payments guaranteed in the November 29 Guaranty

remain unpaid.  *Id.* ¶ 10.

## D.  Seascape Property Transfer and Notice of Default

On May 29, 2009, Seascape transferred title to Lot 53 to Banyan.

Stevens June 14, 2010 Decl. Ex. 7.

On October 2, 2009, Hawaii Escrow & Title ("HET") recorded a

release of the December 3 Mortgage.[5]  Deeley June 14, 2010 Decl. Ex. 8 at 1.  In

an affidavit attached to the mortgage release, HET President Denise M. Kaehu

("Kaehu") stated that she was satisfied that "the subject Mortgage was paid in

full."  *Id.* Ex. 8 at 3.  She stated that "employees of HET have attempted to contact

[Fairway], the record holder of the subject Mortgage, to execute a release of the

subject Mortgage, but all attempts have been unsuccessful."  *Id.*  Kaehu concluded

that Fairway "cannot or will not provide a release of mortgage in recordable form."

_____

[5]  Notably, Fairway contends that HET's release of the December 3 Mortgage relates to Lot 52, but not Lot 53.  Yamamoto June 28, 2010 Decl. Ex. T.  The court need not reach this issue.

*Id*.

On March 18, 2010, Fairway sent Seascape and Banyan a Notice of

Default under the December 3 mortgage.  *Id*. Ex. 9.  In the Notice of Default,

Fairway stated that Seascape violated the terms of the November 29 loan by

conveying Lot 53 to Banyan without obtaining prior written consent from Fairway.

*Id*. at 2.  Fairway therefore "elected to exercise its option to accelerate and declare

the entire balance of the indebtedness owed by [Seascape] immediately due and

payable."  *Id*.  Fairway demanded payment of $20,888,109.52 and advised

Plaintiffs that failure to pay could result in foreclosure.  *Id*.

On March 24, 2010, Plaintiffs demanded that Fairway release the

December 3 Mortgage.  Yamamoto June 28, 2010 Decl. Ex. Q at 2.  Fairway

refused, stating that "[t]he release of the Mortgage and Original Guaranty was

predicated on the execution of the New Guaranty and Security Agreement," *id*. Ex.

R at 1, and sought to foreclose.  *Id*. Ex. U.  Fairway contends that Seascape is in

breach of the December 3 Mortgage and owes principal and interest of

$20,888,109.52.  Van Maren June 25, 2010 Decl. Ex. P.  Stevens stated that he

"believe[s] that Mr. Van Maren has instituted the foreclosure on [Lot 53] because

[Stevens] would not agree to a restructure of the Sonny Ventures loan to [Van

Maren's] liking," Stevens July 9, 2010 Decl. ¶ 26.  Plaintiffs filed the present suit

12

seeking to enforce the Seascape Letter Agreement and enjoin foreclosure.

## E.     Procedural Background

On May 27, 2010, Plaintiffs filed the Complaint.  The Complaint alleges claims for (1) breach of contract, (2) declaratory judgment, (3) release of mortgage pursuant to Hawaii Revised Statutes ("HRS") § 506-8, and (4) abuse of process.

On June 14, 2010, the parties stipulated to a briefing schedule and agreed to continue the non-judicial foreclosure.  On June 14, 2010, Plaintiffs filed their Motion.  On June 28, 2010, Fairway filed its Motion, an Opposition, and a Motion to Continue Hearing.  On July 12, 2010, Plaintiffs filed their Opposition and Reply.  On July 26, 2010, Fairway filed a Reply.[6]  A hearing was held on August 16, 2010.

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.

---

[6] On August 5, 2010, Plaintiffs filed a Reply to their Motion for Preliminary Injunction.  Doc. No. 39.  In the Reply, Plaintiffs do not, however, address their Motion for Preliminary Injunction, but instead raise new arguments and new theories of their case in response to Fairway's Reply.  The court finds that this filing is improper and does not consider it.  Plaintiffs did not seek leave of court to file what was effectively a sur-reply and neither the Local Rules nor the Federal Rules of Civil Procedure permit sur-replies.  *Haw. Disability Rights Ctr. v. Cheung*, 2007 WL 2874842, at *1, n.1 (D. Haw. Sept. 27, 2007) ("Insofar as Defendants did not obtain leave of court to file the surreply, the Court will not consider it.").

R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. **DISCUSSION**

The parties seek summary judgment on all counts. The court addresses Fairway's Motion to Continue and then turns to each of the four counts of the Complaint.

## A.   **Motion to Continue to Hearing**

As the court ruled at the August 16, 2010 hearing, Fairway's Rule 56(f) Motion to Continue Hearing is DENIED.

Pursuant to Rule 56(f), the court may order a continuance, among other alternatives, "if a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." "A

15

party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & County of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).  "Under Rule 56(f), an opposing party must make clear what information is sought and how it would preclude summary judgment." *Garrett v. City & County of S.F.*, 818 F.2d 1515, 1518 (9th Cir. 1987).  "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999) (finding that failing to file the required Rule 56(f) affidavit detailing with particularity the information sought was fatal to request for further discovery); *see also Tatum*, 441 F.3d at 1100 (finding that an attorney declaration was insufficient to support a Rule 56(f) continuance where declaration failed to specify specific facts to be discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment).

Here, Fairway failed to meet the requirements of Rule 56(f).  Fairway did not include any affidavits discussing the need for further discovery with its Motion to Continue Hearing.  With its Reply, Fairway included a declaration from

16

defense counsel Donna Yamamoto stating that "Stevens must be deposed" to explain (1) why his declaration statements concerning the parties' intent in entering the Seascape Letter Agreement differ from statements given by Van Maren and (2) why Stevens did not object to Van Maren's March 12 email, Van Maren June 25, 2010 Decl. Ex. X-1.  Yamamoto July 26, 2010 Decl. ¶ 3.  Apart from these facts, Yamamoto's Declaration did not set forth any additional facts Fairway seeks to uncover or otherwise explain why a continuance is needed.  Further, Yamamoto's Declaration offered no explanation as to how the facts Fairway seeks to learn from Stevens would preclude summary judgment.  Accordingly, the court finds that Fairway failed to comply with the Rule 56(f) requirements and DENIES Fairway's Motion to Continue Hearing.

**B.      Count I: Breach of Contract**

*1.      Plaintiffs' Motion for Summary Judgment on Count I*

Plaintiffs contend that they are entitled to summary judgment on the breach of contract claim because Fairway breached the Seascape Letter Agreement by failing to release the December 3 Mortgage.  Plaintiffs concede, however, that summary judgment in their favor is not warranted if the court determines that the Seascape Letter Agreement is not integrated.  Doc. No. 24, Pls.' Opp'n at 7-9 n.3 (conceding that "numerous questions of material fact would preclude summary

judgment" "if [the] parol evidence rule is not applied").  As the court explains

below, based on the record before the court at this time, the court determines that

the Seascape Letter Agreement is not integrated and, as a result, the court DENIES

summary judgment to Plaintiffs on count one.

      The parol evidence rule only applies if an agreement is integrated -- if

so, "[a]bsent an ambiguity, [the] contract terms should be interpreted according to

their plain, ordinary, and accepted sense in common speech." *Found. Int'l, Inc. v.*

*E.T. Ige Const., Inc.*, 102 Haw. 487, 495, 78 P.3d 23, 31 (Haw. 2003) (citation and

quotations omitted).  Thus, "a prerequisite to the application of the [parol evidence

rule] is that there must first be a finding by the trial court that the writing was

intended to be the final and, therefore, integrated expression of the parties'

agreement." *Matter of O.W. Ltd. P'ship*, 4 Haw. App. 487, 491, 668 P.2d 56, 60

(1983) (citing Restatement (Second) of Contracts §§ 209 comment c, 210 comment

b, 213 comment b (1981)) (additional citations omitted); *see also State Farm Fire*

*& Cas. Co. v. Pac. Rent-All Inc.*, 90 Haw. 315, 324, 978 P.2d 753, 762 (1999)

(stating "absent fraud, duress, mistake or ambiguity, extrinsic evidence is excluded

*once it is determined that a contract is fully integrated*") (emphasis added).

      "[A]n agreement is integrated where the parties thereto adopt the

writing or writings as the final and complete expression of the agreement and an

'integration' is the writing or writings so adopted." *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 300, 310 n.6, 944 P.2d 97, 107 n.6 (Haw. App. 1997) (citing *Black's Law Dictionary* 809 (6th ed. 1990) (citation omitted)).

Whether a contract is integrated is a question for the court, Restatement (Second) of Contract § 210(3), and the court may use all available evidence in reaching this determination.

> That a writing was or was not adopted as a completely integrated agreement may be proved by any relevant evidence.  A document in the form of a written contract, signed by both parties and apparently complete on its face, may be decisive of the issue in the absence of credible contrary evidence.  But a writing cannot of itself prove its own completeness, and wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties.

Restatement (Second) of Contracts § 210 comment b; *see also United Public Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc.*, 113 Haw. 127, 141, 149 P.3d 495, 509 (2006) (citing Restatement (Second) of Contracts § 210 comment b); *Pancakes*, 85 Haw. at 311, 944 P.2d at 108 ("[W]here the parties reduce an agreement to a writing [that] in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." (citing Restatement (Second) of Contracts

§ 214 comment c at 134 (1981))); *Matter of O.W. Ltd. P'ship*, 4 Haw. App. at 491,

668 P.2d at 60 ("All relevant evidence bearing on the threshold question of

whether the agreement is an 'integrated' one is admissible.") (citations omitted).

Based on the evidence presented in these pending motions, the court

finds that the Seascape Letter Agreement is not integrated.  The court bases this

determination on the facts that: (1) the Seascape Letter Agreement contains no

integration clause; (2) Van Maren asserts that the parties intended that the March

14 Letters would constitute a single agreement concerning, among other things,

both Seascape and Sonny Ventures, Van Maren June 25, 2010 Decl. ¶ 11; (3) Van

Maren and Stevens executed the March 14 Letters, including the Seascape Letter

Agreement, contemporaneously; (4) Van Maren presented the terms of the March

14 Letters to Stevens collectively without distinguishing the terms of the Seascape

Letter Agreement, *id*. Ex. X-1; and (5) the November 29 Guaranty and the Sonny

Ventures Letter Agreement contain interrelated terms.

On this fifth point, the court finds that the entangled terms of the

November 29 Guaranty and the Sonny Ventures Letter Agreement suggest that the

Seascape Letter Agreement is not integrated.  The November 29 Guaranty

provided for guarantees on both (1) the November 29 Loan from Fairway to

Seascape and (2) the Amended Sonny Ventures Operating Agreement.  Van Maren

June 25, 2010 Decl. Ex. E.  The Sonny Ventures Letter Agreement provided for revision of the Amended Sonny Ventures Operating Agreement -- the revision of which would, necessarily, impact the terms of the November 29 Guaranty (because the November 29 Guaranty guaranteed payment from Stevens to Van Maren pursuant to the terms of the Amended Sonny Ventures Operating Agreement).  *Id.* Ex. G.  In turn, any change to the November 29 Guaranty impacts Seascape's obligations pursuant to the December 3 Mortgage because the December 3 Mortgage obligates Seascape to honor the November 29 Guaranty.  Stevens June 14, 2010 Decl. Ex. 1 at 1-4.

The provisions of the November 29 Guaranty and the Sonny Ventures Letter Agreement show that Van Maren and Stevens had a practice of forming overlapping agreements concerning *both* Seascape and Sonny Ventures.  These documents also show that Van Maren and Stevens had so intertwined their obligations to one another that Fairway's release of the December 3 Mortgage would impact not only Seascape and Fairway, but also Sonny Ventures and CTI Reno.  As a result, the Seascape Letter Agreement's silence as to both the November 29 Guaranty and Sonny Ventures evinces a lack of integration.[7]

---

[7]  Contrary to their earlier position, Plaintiffs argued for the first time in their August 5, 2010 Sur-Reply and later at the August 16, 2010 hearing that Plaintiffs are entitled to summary judgment if the court finds that the Seascape Letter Agreement is partially integrated.  *See*

(continued...)

The court therefore DENIES summary judgment to Plaintiffs on the

breach of contract claim.

### 2.      *Fairway's Motion for Summary Judgment on Count I*

Fairway argues that the court should grant summary judgment in its

favor on count one because the Seascape Letter Agreement is unenforceable as a

result of abandonment or novation.  Neither argument is persuasive.

Fairway first contends that Seascape abandoned the Seascape Letter

Agreement because Stevens failed to sign the Revised Sonny Ventures Guaranty.

A material question of fact exists, however, concerning whether the Seascape

Letter Agreement obligated Stevens to sign the Revised Sonny Ventures Guaranty

-- the Seascape Letter Agreement on its face contains no mention of the Revised

Sonny Ventures Guaranty and Stevens stated that the parties did not intend to

condition the Seascape Letter Agreement on Stevens signing the guaranty.  Stevens

June 14, 2010 Decl. Ex. 2; Stevens July 9, 2010 Decl. ¶ 23.  As a result, a material

question of fact exists as to whether Stevens' failure to sign the Revised Sonny

---

[7](...continued)
Restatement (Second) of Contracts § 210 (defining a partially integrated agreement as "an
integrated agreement other than a completely integrated agreement").  The court does not
consider Plaintiffs' untimely argument.  *See White v. FedEx Corp.*, 2006 WL 618591, at *2
(N.D. Cal. Mar. 13, 2006) ("The Court will not consider any arguments or evidence raised for
the first time at the hearing.").

Ventures Guaranty constitutes abandonment.  Additionally, Seascape's payment of $5,963,626.74 to Fairway also raises -- at a minimum -- a genuine issue of material fact concerning whether Seascape intended to abandon the Seascape Letter Agreement.

Fairway next argues that a novation of the Seascape Letter Agreement occurred because Stevens refused to sign the Revised Sonny Ventures Guaranty. A novation is "[t]he act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party."  *Black's Law Dictionary* 487-88 (2d pocket ed. 2001); *see also Haw. Builders Supply Co. v. Kaneta*, 1957 WL 10618, at *1 (Haw. Terr. 1957) (defining novation as a contract that "discharges immediately a previous contractual duty or a duty to make compensation, and (b) creates a new contractual duty, and (c) includes as a party one who neither owed the previous duty nor was entitled to its performance") (citing Restatement of Contracts § 424).

Fairway fails to explain how Stevens' failure to sign the Revised Sonny Ventures Guaranty constitutes a novation.  Indeed, the doctrine of novation seems completely inapposite here where Fairway presents no evidence that the parties agreed to an additional or alternative contract following the Seascape Letter Agreement.  Stevens' failure to sign the Revised Sonny Ventures Guaranty does

23

not support the conclusion that Seascape and Fairway agreed to replace the

Seascape Letter Agreement with an alternative agreement.  Accordingly, Fairway

has not carried its burden to show that it is entitled to summary judgment on

Plaintiffs' breach of contract claim as a result of a novation.

In sum, the court DENIES summary judgment to Fairway on count

one.

## C.    Counts II, III, and IV

At the hearing, both parties agreed that if the court denied summary

judgment to both parties on count one, that the court should also deny summary

judgment to both parties on counts two, three, and four.  Thus, the parties agree

that because material questions of fact remain as to the breach of contract,

questions likewise remain on the issue of declaratory relief, release of mortgage

pursuant to HRS § 506-8, and abuse of process.  Accordingly, the court DENIES

summary judgment to both Plaintiffs and Fairway on counts two, three, and four.[8]

///

///

///

_____

[8] Fairway agues that it is entitled to a declaratory judgment.  Doc. No. 24, Fairway's
Mot. at 17.  Fairway has not, however, filed a counterclaim for declaratory judgment --
accordingly, the court does not consider this issue.

# V.  <u>CONCLUSION</u>

Based on the above, the court DENIES Defendant's Motion to Continue, DENIES Plaintiff's Motion and DENIES Defendant's Motion.  Count I (breach of contract), Count II (declaratory judgment), Count III (release of mortgage), and Count IV (abuse of process) remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 25, 2010.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Seascape Dev., LLC et al. v. Fairway Capital, LLC*, Civ. No. 10-00301 JMS/LEK, Order Denying Plaintiffs' Motion for Summary Judgment and Denying Defendant's Cross-Motion for Summary Judgment