# IN THE UNITED STATES DISTRICT COURT

| | |
|---|---|
| SEASCAPE DEVELOPMENT, LLC, ) <br> a Hawaii limited liability company; ) <br> BANYAN TRIMONT PROPERTIES, ) <br> LLC, a Hawaii limited liability ) <br> company, ) <br> ) <br>         Plaintiffs, ) <br> ) <br>    vs. ) <br> ) <br> FAIRWAY CAPITAL, LLC, a ) <br> Nevada limited liability company, ) <br> ) <br>         Defendant. ) <br> _____ ) | CIVIL NO. 10-00301 JMS/RLP <br><br> ORDER DENYING PLAINTIFFS' <br> SECOND MOTION FOR SUMMARY <br> JUDGMENT |

## ORDER DENYING PLAINTIFFS' SECOND
## MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This breach of contract action concerns a $7.2 million loan extended by Defendant Fairway Capital, LLC ("Fairway") to Plaintiff Seascape Development, LLC ("Seascape") and secured by a mortgage on real property in Kailua-Kona, Hawaii. On March 14, 2008, Seascape and Fairway entered into an agreement (the "Seascape Letter Agreement") to settle the debt and release the mortgage. Seascape contends that it fully performed under the Seascape Letter Agreement by satisfying the debt such that Fairway should release the mortgage.

On May 29, 2009, Seascape transferred one of the lots secured by the mortgage to Plaintiff Banyan Trimont Properties, LLC ("Banyan").

Fairway contends, among other things, that the Seascape Letter Agreement is not the parties' entire agreement and that Seascape has breached the terms of their full agreement by transferring the property to Banyan. Indeed, two other agreements were entered into the same day as the Seascape Letter Agreement. On August 25, 2010, after extensive briefing and a full hearing on the merits, this court issued a twenty-five page Order Denying Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross-Motion for Summary Judgment ("August 25 Order"), finding that the Seascape Letter Agreement was not integrated. *Seascape Dev. v. Fairway Capital*, 737 F. Supp. 2d 1207 (D. Haw. 2010).

Currently before the court is Plaintiffs' Second Motion for Summary Judgment, in which it makes two principal arguments. First, Plaintiffs argue that even if the parties' entire agreement includes all three letter agreements, such agreement does not require Seascape to provide any additional consideration before Fairway must release the mortgage. In the alternative, Plaintiffs argue that looking at the Seascape Letter Agreement by itself, it is partially integrated and does not require any additional consideration by Seascape. Based on the

following, the court finds that genuine issues of material fact exist regarding the scope and content of the parties' agreement and therefore DENIES Plaintiffs' Second Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

Although the August 25 Order provides a detailed analysis of the facts, the court recites the following facts relevant to Plaintiffs' Second Motion:

#### 1. *The Seascape Loan*

Seascape, controlled by John Stevens ("Stevens") is in the business of acquiring and developing real property. Doc. No. 13-2, Stevens June 14, 2010 Decl. ¶¶ 2, 5.[1] To finance his property development projects, Stevens has repeatedly borrowed money from Bernie Van Maren and entities controlled by Van Maren (collectively, "Van Maren"), including Fairway. *Id*. ¶¶ 7-9.

On November 29, 2007, Fairway loaned Seascape $7.2 million (the "November 29 Loan"). *Id.* ¶ 7; Doc. No. 20-3, Ex. C. Fairway and Seascape executed both a promissory note (the "November 29 Note"), Doc. No. 20-2, Ex. B, and a loan agreement. Doc. No. 20-3, Ex. C. In conjunction with the November 29 Loan, Stevens and Stevens-related entities also entered into a Guaranty in favor

---

[1] All citations to exhibits are from the parties' original summary judgment briefing.

of Fairway (the "November 29 Guaranty"). Doc. No. 20-5, Ex. E. By the terms of the November 29 Guaranty, Stevens and Stevens-related entities (collectively, the "Guarantors") guaranteed not only payment to Fairway on the November 29 Loan, but also payments owed to a Van Maren entity, CTI Reno 100 (Morgan), LLC ("CTI Reno") by a Stevens entity Sonny Ventures, LLC.[2] *Id.*; Doc. No. 20-31, Ex. EE at 3.

Finally, Fairway and Seascape executed a mortgage (the "December 3 Mortgage"), which was recorded on December 3, 2007. Doc. No. 13-2, Stevens June 14, 2010 Decl. ¶¶ 7, 8, 14; Doc. No. 13-4, Ex. 1 at 2, 29-38.[3] The December 3 Mortgage provides that in the event Seascape shall sell, convey, or otherwise encumber certain real property, "then the entire balance of the Indebtedness[] shall become immediately due and payable at the option of [Fairway]." Doc. No. 13-4, Ex. 1 at 9.

The December 3 Mortgage also secured "payment of the Indebtedness" and "payment (with interest provided) and performance by [Seascape] of the Obligations." *Id*. at 2. The December 3 Mortgage defines

---

[2] In March 2007, Van Maren had taken a 51% ownership interest in Sonny Ventures, LLC after Sonny Ventures was facing foreclosure. Stevens June 14, 2010 Decl. ¶ 15.

[3] Exhibit 1 is numbered in some places, but not in others. As with other unnumbered exhibits, the court counts the exhibit's pages sequentially.

Indebtedness and Obligations:

> Indebtedness: The principal of and all other amounts,
> payments and premiums due under the Note . . . and all
> other indebtedness of [Seascape] to [Fairway] and
> additional advances under, evidenced by and/or secured
> by the Loan Documents, plus interest on all such
> amounts.
> . . .
> Obligations: Any and all of the covenants, promises and
> other obligations (including, without limitations, the
> Indebtedness) made or owing by [Seascape] or due to
> [Fairway] under and/or as set forth in the Loan
> Documents and all of the covenants, promises and other
> obligations made or owing by [Seascape] to each and
> every other Person relating to the Property, provided that
> when the Indebtedness has been repaid the obligations
> will not be deemed to include any contingent claims (e.g.
> indemnity).

*Id*. at 3, 4.  The Mortgage defines the Loan Documents as "[t]he Note, this

Mortgage, the Guarantee, the Loan Agreement and all other documents,

evidencing, securing or relating to the Loan, the payment of the Indebtedness or

the performance of the Obligations."  *Id*. at 4.

### 2.    *The Subsequent Agreements*

On March 14, 2008, various Smith- and Van Maren-related entities

entered into three agreements.

In the first agreement, the Seascape Letter Agreement, Seascape

agreed to repay the November 29 Loan in exchange for release of the December 3

Mortgage because Seascape had found a new capital investor (Richard L. Fischer). Doc. No. 13-5, Ex. 2 at 1.  The Seascape Letter Agreement provides that "to repay the Loan in full on March 14, 2008, Seascape must pay . . . $5,945,828.25[]."  *Id.* at 2.  In exchange, Fairway must provide three forms of consideration:

> In consideration of Seascape's payment of all outstanding principal and interested owed under the Note as aforesaid, Fairway shall execute, among other things, (1) a UCC Financing Statement Amendment to terminate the UCC Financing Statement in favor of Fairway as secured party recorded in the Bureau of Conveyances of the State of Hawaii ("Bureau") as Document No. 2007-208967, (2) a Release of Mortgage in connection with its Mortgage, Assignment of Rents, Security Agreement and Fixture Filing which encumbers certain real property located in Kailua-Kona, Hawaii bearing Tax Map Key Nos. (3) 7-3-010:052, 053 and 054 recorded in said Bureau as Document No. 2007-208966, and (3) a Release of Mortgage in connection with its unrecorded Mortgage, Assignment of Rents, Security Agreement and Fixture Filing covering certain real property located in Kailua-Kona, Hawaii bearing Tax Map Key No. (3) 7-3-010:051.

*Id.*

In the second agreement, the Sonny Ventures Letter Agreement, CTI Reno agreed to release Stevens from his guaranty to pay CTI Reno preferential limited distributional interest in Sonny Ventures in exchange for, among other things, (1) a guaranty by Stevens and Stevens Family Limited Partnership LLLP ("Stevens Family LLLP") to CTI Reno of the return on its investment in Sonny

Ventures plus a five percent return per annum and (2) a pledge by Stevens and the Stevens Family LLLP of their membership interest in Oak Canyon Ranch LLC as collateral security for repayment to CTI Reno. Doc. No. 20-7, Ex. G at 2. The Sonny Ventures Letter Agreement further provided:

> Within ten (10) calendar days after the execution of this letter agreement, the parties shall prepare, execute and deliver revised guaranty, pledge and related documents to reflect the foregoing agreements and such other terms in form and content approved by [CTI Reno]; *provided, however*, the same shall not delay the payments to be made pursuant to the (a) letter agreement between Fairway Capital LLC and Seascape Development, LLC, and (b) letter agreement between Sonny Ventures, LLC and Seascape Group LLC, a Hawaii limited liability company both of even date herewith.

*Id*.

The third agreement, the Wattie Green Letter Agreement between Sonny Ventures and Richard L. Fischer, the capital investor referred to in the Seascape Letter Agreement and who ultimately supplied the funds for payment to Fairway, is not at issue.

According to Van Maren, the parties intended that all three written agreements would constitute one single agreement between the parties, but structured the agreement as three letter agreements at the request of Seascape's attorney. *See* Doc. No. 19-4, Van Maren June 25 Decl. ¶ 11. Van Maren further

asserts that Stevens told him that Stevens "wanted separate agreements to make sure that there was no reference in the closing documents to any guarantees or liabilities to [Fairway]" so that Fischer would not be aware of them. Doc. No. 19-4, Van Maren July 14 Decl. ¶¶ 5, 9. In comparison, Fischer asserts that prior to these letter agreements, he was aware of Stevens' obligations to Van Maren. Doc. No. 39-2, Fischer Aug. 4, 2010 Decl. ¶ 14.

### 3. *Events After the Letter Agreements*

On March 17 and 19, 2008, Seascape paid Fairway $ 5,963,626.74 -- the amount stated in the Seascape Letter Agreement plus three days of interest. Doc. No. 13-2, Stevens June 14, 2010 Decl. ¶¶ 10-12; Doc. No. 13-9, Ex. 6. On March 19, 2008, Fairway's attorneys acknowledged receipt of payment from Seascape. Doc. No. 13-7, Ex. 4. That same day, Fairway's attorneys prepared a UCC Termination form and mortgage release forms. Doc. No. 13-8, Ex. 5. Seascape reviewed and approved the releases, but Fairway did not sign or record the releases. Doc. No. 13-2, Stevens June 14, 2010 Decl. ¶ 5.

Despite this movement on the Seascape Letter Agreement, not much progress was made on the Sonny Ventures Letter Agreement. On November 18, 2008, CTI Reno sent Stevens a notice of default regarding Sonny Ventures (the "Sonny Ventures Notice of Default"). Doc. No. 20-10, Ex. J at 1-2. CTI Reno

notified Stevens that he was in default based on Stevens' failure to execute a Revised Guaranty and Pledge (the "Revised Sonny Ventures Guaranty"). *Id*. The Sonny Ventures Notice of Default stated that "[CTI Reno] intends to pursue all of its rights under the [November 29 Guaranty] against [Stevens] personally and the other parties thereto." *Id*. at 2. According to Van Maren, the Sonny Ventures-related payments guaranteed in the November 29 Guaranty remain unpaid. Doc. No. 19-4, Van Maren June 25 Decl. ¶ 10.

On May 29, 2009, Seascape transferred title to Lot 53 to Banyan. Doc. No. 13-10, Ex. 7. On March 18, 2010, Fairway sent Seascape and Banyan a Notice of Default under the December 3 mortgage, stating that Seascape violated the terms of the November 29 loan by conveying Lot 53 to Banyan without obtaining prior written consent from Fairway. Doc. No. 13-12, Ex. 9 at 2. Fairway therefore "elected to exercise its option to accelerate and declare the entire balance of the indebtedness owed by [Seascape] immediately due and payable." *Id*. Fairway demanded payment of $20,888,109.52 and advised Plaintiffs that failure to pay could result in foreclosure. *Id*.

///

///

///

**B.     Procedural History**

Plaintiffs filed their Second Motion for Summary Judgment on October 5, 2010.  Defendants filed an Opposition on November 22, 2010, and Plaintiffs filed a Reply on November 30, 2010.  A hearing was held on December 13, 2010, in which the court required supplemental briefing on the issue of partial integration.  On January 10, 2011, Plaintiffs filed their Supplemental Memorandum.  On February 11, 2011, Defendants filed their Supplemental Opposition, and Plaintiffs filed their Supplemental Reply on February 25, 2011.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor." (citations omitted)).

## IV. <u>DISCUSSION</u>

The parties' contract dispute appears simple enough -- at issue is whether Seascape fully performed under the Seascape Letter Agreement when it paid off the November 29 Loan such that Fairway must now release the December 3 Mortgage. The Seascape Letter Agreement does not outline any other terms between the parties, but Fairway has presented evidence suggesting that the parties agreed that Fairway is not obligated to release the December 3 Mortgage until Seascape paid the November 29 Loan *and* Stevens performed under the Sonny Ventures Letter Agreement. Plaintiffs argue that the parol evidence rule precludes Fairway from presenting this evidence. Although simple to articulate, resolving this dispute is not that easy -- at issue is not just one written document (the Seascape Letter Agreement), but rather three separate letter agreements entered into on the same day between Stevens and Stevens-related entities on the one hand, and Fairway and Van Maren-related entities on the other.

In their Second Motion for Summary Judgment, Plaintiffs do not ask the court to determine the scope of the parties' agreement. Rather, Plaintiffs take a dual approach, asserting that regardless of how the court construes the scope of the parties' agreement, Fairway's extrinsic evidence is still barred by the parol

evidence rule and Plaintiffs are entitled to summary judgment. Specifically, Plaintiffs argue that: (1) assuming that the three letter agreements are read together as a completely integrated agreement, then the only consideration required for release of the December 3 Mortgage is Seascape's payment for the November 29 Loan; and, alternatively, (2) the Seascape Letter Agreement is partially integrated and therefore Fairway cannot present evidence that the parties agreed that the consideration for release of the December 3 Mortgage was anything more than Seascape's payment of the November 29 Loan.[4]  In opposition, Fairway argues that Plaintiffs are basically seeking a reconsideration of the August 25 Order and in any event Plaintiffs' arguments are meritless.  The court addresses these issues.

## A.      Whether Plaintiffs Are Seeking Reconsideration of the August 25 Order

Fairway argues that Plaintiffs are essentially seeking a reconsideration of the August 25 Order.  Indeed, Plaintiffs suggest in their Motion that the August 25 Order erred in finding that certain evidence supports its determination that the Seascape Letter Agreement is not integrated.  These alleged errors,[5] however, are

_____

[4]  Arguably, Plaintiffs' arguments put the cart before the horse -- either argument may be moot depending on how the court construes the scope of the parties' agreement.  As explained below, however, given that both arguments lack merit the court need not determine the scope of the parties' agreement to deny Plaintiffs' Second Motion for Summary Judgment.

[5]  Specifically, Plaintiffs suggest that the August 25 Order erred in finding that the Seascape Letter Agreement is integrated on the basis that Van Maren discussed the terms of letter agreements collectively in a March 12, 2008 email and the December 3 Mortgage and Sonny Ventures Letter Agreement contain interrelated terms.  *See* Doc. No. 56-1, Pls.' Mot. at

irrelevant to Plaintiffs' actual summary judgment arguments now before the court.

To frame properly what was previously before the court and the arguments now made in Plaintiffs' Second Motion, it is important to understand the arguments made in the first round of motions. In their first Motions for Summary Judgment, the only issue presented on contract interpretation was whether the Seascape Letter Agreement is fully integrated -- although the August 25 Order discussed whether the Seascape Letter Agreement was "integrated," the parties' arguments and the court's analysis was directed to whether the Seascape Letter Agreement was fully integrated. If fully integrated, the parol evidence rule (barring, fraud, mistake, ambiguity, etc.) would prevent Fairway from presenting evidence that the parties agreed that Fairway need not release the December 3 Mortgage until Seascape paid the loan and Stevens performed under the Sonny Ventures Letter Agreement. Because the August 25 Order found that the Seascape

_____

19-21; *see also* Doc. No. 71, Pls.' Suppl. Mot. 13. The court disagrees with Plaintiffs' characterizations of this evidence -- the March 12, 2008 Van Maren email indicates that Van Maren viewed these three letter agreements as one large transaction, *see* Van Maren June 25, 2010 Decl. Ex. X-1 ("John is looking for deed releases, payoff statements, escrow instructions etc for the Seascape and Wattie Green collateral."), and the December 3 Mortgage specifically defines "obligations" as all obligations "made or owing by Mortgagor or due Mortgagee under and/or as set forth in the Loan Documents," with "Loan Documents" being defined as, among other things, "the Note, this Mortgage, the Guarantee, [and] the Loan Agreement." *See* Doc. No. 13-4, Ex. 1. In any event, the court's determination that the Seascape Letter Agreement is not fully integrated was based on several factors and the Van Maren email and the interrelation between the Guaranty and Sonny Ventures Letter Agreement make up only a part of the court's reasoning. *See Seascape Dev. v. Fairway Capital*, 737 F. Supp. 2d 1207, 1216 (D. Haw. 2010).

14

Letter Agreement was not fully integrated, the parol evidence rule did not apply to bar Fairway's evidence.

The August 25 Order did not determine the scope of the parties' agreement. Specifically, neither party argued, and the court did not address, whether summary judgment would be appropriate if the three letter agreements constitute the parties' entire agreement. Nor did the court address whether the Seascape Letter Agreement was partially integrated -- Plaintiffs did not raise the issue of partial integration until their Sur-Reply and the court therefore expressly declined to address that argument as untimely raised. 737 F. Supp. 2d at 1216 n.7.

Thus, on the issue of contract interpretation, the August 25 Order is limited to a single finding -- that the Seascape Letter Agreement is not fully integrated. Plaintiffs' present arguments do not raise the issue of whether the Seascape Letter Agreement is fully integrated, but rather raise arguments based on assumptions regarding the scope of the parties' agreement. Accordingly, Plaintiffs are not seeking reconsideration of the August 25 Order and the court will address each of Plaintiffs' arguments.

///

///

///

**B.     Plaintiffs' Argument that the Three Letter Agreements Constitute the Parties' Entire Agreement**

In the first round of summary judgment motions, Fairway responded to Plaintiffs' argument that the Seascape Letter Agreement was fully integrated by asserting that the parties' entire and integrated agreement was set forth in the three letter agreements taken as a whole.  *See* Doc. No. 25 at 3, 8.  Plaintiffs now claim that they are entitled to summary judgment even if the court accepts Fairway's argument that the three letter agreements represent a single fully integrated agreement.[6]  Specifically, Plaintiffs argue that nothing in the three letter agreements requires Stevens to execute a Revised Guaranty and Pledge before Fairway would be obligated to release the December 3 Mortgage, and the parol evidence rule precludes Van Maren's statements to the contrary.  Because the court finds the Sonny Ventures Letter Agreement ambiguous, the court rejects this argument.

"The parol evidence rule generally precludes the use of extrinsic evidence to vary or contradict the terms of an unambiguous and integrated contract -- a writing the parties have adopted as the expression of their final agreement."  *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 300, 310, 944 P.2d 97,

_____

[6]  Given the ruling in this Order, the court need not determine whether the three letter agreements should be construed as a single agreement or as three separate agreements.

107 (Haw. App. 1997). The parol evidence rule provides that "[a]bsent an

ambiguity, [the] contract terms should be interpreted according to their plain,

ordinary, and accepted sense in common speech." *Found. Int'l, Inc. v. E.T. Ige

Const., Inc.*, 102 Haw. 487, 495, 78 P.3d 23, 31 (Haw. 2003) (citation and

quotations omitted). With that said, however, the parol evidence rule "is subject to

many limitations and exceptions [that] permit the reception of parol evidence

where, for example, the writing in question is ambiguous or incomplete, or is

attended by fraud, mistake, or erroneous omission." *Pancakes of Haw., Inc.*, 85

Haw. at 310, 944 P.2d at 107 (quoting 29A Am. Jur. 2d Evid. § 1092, at 551-52

(2d ed. 1994)); *see also State Farm Fire & Cas. Co. v. Pac. Rent-All Inc.*, 90 Haw.

315, 324, 978 P.2d 753, 762 (1999).

In determining whether an ambiguity exists, "[t]he court should look

no further than the four corners of the document." *State Farm Fire & Cas. Co.*, 90

Haw. at 324, 978 P.2d at 762. The Hawaii Supreme Court has explained that in

determining whether an agreement is ambiguous,

> the test lies not necessarily in the presence of particular
> ambiguous words or phrases but rather in the purport of
> the document itself, whether or not particular words or
> phrases in themselves be uncertain or doubtful in
> meaning. In other words, a document may still be
> ambiguous although it contains no words or phrases
> ambiguous in themselves. The ambiguity in the
> document may arise solely from the unusual use therein

17

of otherwise unambiguous words or phrases.  An
ambiguity may arise from words plain in themselves but
uncertain when applied to the subject matter of the
instrument.  In short, such an ambiguity arises from the
use of words of doubtful or uncertain meaning or
application.  (citations omitted).

*Hokama v. Relinc Corp*., 57 Haw. 470, 474-75, 559 P.2d 279, 282 (1977) (quoting

*Bishop Est. Trust v. Castle & Cooke*, 45 Haw. 409, 421, 368 P.2d 887, 894

(1962)).  "Where there is an ambiguity, parol evidence is admissible to explain the

intent of the parties, and intent then becomes a question for the trier of fact."

*DiTullio v. Hawaiian Ins. & Guar. Co.*, 1 Haw. App. 149, 155, 616 P.2d 221, 226

(1980); *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 125, 839 P.2d

10, 31 (1992).

Applying these principles, the court finds that the letter agreements

(read as a single, fully integrated agreement) are ambiguous regarding whether

Stevens must execute a Revised Guaranty and Pledge before Fairway must release

the December 3 Mortgage.  The only provision that addresses timing of the parties'

consideration(s) is found in the Sonny Ventures Letter Agreement, which provides

that Stevens must execute the Revised Guaranty and Pledge within ten days, but

that this ten-day requirement shall not delay Stevens' payment to Fairway under

the Seascape Letter Agreement:

Within ten (10) calendar days after the execution of this

letter agreement, the parties shall prepare, execute and
deliver revised guaranty, pledge and related documents to
reflect the foregoing agreements and such other terms in
form and content approved by [CTI Reno]; *provided,
however*, the same shall not delay the payments to be
made pursuant to the (a) letter agreement between
Fairway Capital LLC and Seascape Development, LLC,
and (b) letter agreement between Sonny Ventures, LLC
and Seascape Group LLC, a Hawaii limited liability
company both of even date herewith.

Doc. No. 20-7, Ex. G at 2 (emphasis in original).

In sum, this paragraph provides that without delay, Seascape shall

make its payments to Fairway under the Seascape Letter Agreement, and that

within ten days, Stevens must execute the Revised Guaranty and Pledge.  By

discussing the timing requirements of both agreements together and outlining the

expectations of when they will occur, this provision arguably links Stevens'

performance under the Sonny Ventures Letter Agreement with Seascape's

performance under the Seascape Letter Agreement.  This provision is completely

silent, however, regarding when Fairway must perform under the Seascape Letter

Agreement by releasing the December 3 Mortgage.  In other words, although

Seascape must make its payment to Fairway under the Seascape Letter Agreement

without delay and Stevens must execute the Revised Guaranty and Pledge within

ten days, there is no indication regarding when Fairway must release the December

3 Mortgage.

By linking Seascape's consideration under the Seascape Letter Agreement and Steven's consideration under the Sonny Ventures Letter Agreement together, it is unclear whether the parties intended that Stevens and Stevens-related entities must provide this consideration before Fairway releases the December 3 Mortgage (as proposed by Defendants) or that Fairway must release the December 3 Mortgage after Seascape pays off the November 29 Loan (as proposed by Plaintiffs).  In short, the meaning of the words of this provision is uncertain as to the timing of the parties' obligations such that an ambiguity arises "from words plain in themselves but uncertain when applied to the subject matter of the instrument." *See Hokama*, 57 Haw. at 474-75,  559 P.2d at 282.  Parol evidence is admissible to explain the intent of the parties.

Accordingly, even if the court construes the three letter agreements as a fully integrated agreement, there are still ambiguities regarding the timing of each parties' performance that prevents application of the parol evidence rule.

**C.** **Plaintiffs' Argument on Partial Integration of the Seascape Letter Agreement**

In the alternative, Plaintiffs argue that the Seascape Letter Agreement is partially integrated such that the parol evidence rule applies to prevent Defendants from presenting extrinsic evidence of terms that are inconsistent with the express terms of the written document.  Doc. No. 56, Pls.' Mot. at 25.  Based

on the following, the court rejects this argument.

In general, "an integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." Restatement (Second) of Contracts § 209.  Although Hawaii courts have not addressed the doctrine of partial integration, Hawaii courts follow the Restatement (Second) of Contracts,[7] which explains that an integrated agreement may be either completely integrated or partially integrated:

> (1) A completely integrated agreement is an integrated agreement adopted by the parties as a complete agreement and exclusive statement of the terms of the agreement.
> (2) A partially integrated agreement is an integrated agreement other than a completely integrated agreement.

Restatement (Second) of Contracts § 210; *see also Abercrombie v. Hayden Corp*., 883 P.2d 845, 851 (Or. 1994) ("A partially integrated writing is one that the parties intended to be a final expression as to the terms in the writing, but *not* as to all the terms of their agreement."); *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 88 (Tex.

---

[7]  Although Fairway argues that Hawaii courts would not follow the doctrine of partial integration, *see* Doc. No. 62, Fairway Opp'n at 13-14, Doc. No. 73, Fairway Suppl. Opp'n at 6-11, the court rejects this argument for several reasons.  First, Hawaii courts follow the Restatement (Second) of Contracts, and Fairway presents no valid reason why Hawaii courts would not follow its guidance on partial integration.  Second, although Fairway argues that a minority of courts apply the doctrine of partial integration, the court could find no case actually rejecting this doctrine.  The court believes that the Hawaii Supreme Court would readily apply the principle of partial integration.

App. 2010) ("A partially integrated agreement is a final and complete expression of all the terms addressed in that written agreement, but is not a final and complete expression of all the terms the parties have agreed upon." (quotations omitted)).

An integrated agreement (*i.e.*, one that is a final expression of one or more terms of the parties' agreement, *see* Restatement (Second) of Contracts § 209) is partially integrated if it "omits a consistent additional agreed term which is (a) agreed to for separate consideration, or (b) such a term as in the circumstances might naturally be omitted from the writing." Restatement (Second) of Contracts § 216(2); *see also McDonald v. Sun Oil Co.*, 548 F.3d 774, 786 (9th Cir. 2008) (outlining elements); *Morton & Assocs. v. McCain Foods USA, Inc*., 204 P.3d 167, 172-73 (Or. App. 2009) ("If the parties did not intend the writing to represent their entire agreement, as plaintiff argues here, the agreement is only partially integrated, and prior consistent additional terms orally agreed upon may still form part of the entire agreement.").

As the Restatement provides, "[w]hether an agreement is completely or partially integrated is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule." *Id.* § 210(3). As to partial integration in particular, incompleteness "may also be shown by other writings, which may or may not become part of a

completely or partially integrated agreement.  Or it may be shown by any relevant

evidence, oral or written, that an apparently complete writing never became fully

effective, or that it was modified after initial adoption."  *Id*. § 210 cmt. c; *see also*

*McDonald*, 548 F.3d at 785-86 (explaining that in determining whether an

integrated writing is completely or partially integrated "[t]he court may consider all

the circumstances, including parol evidence, to determine whether the parties

intended the writing to be a complete or partial integration" (citations omitted)).

Applying these principles, the August 25 Order already found that the

Seascape Letter Agreement is not completely integrated, so the preliminary issue is

whether the agreement is not integrated or partially integrated.  Considering all of

the evidence presented, the court finds that the Seascape Letter Agreement contains

a final expression as to at least *some* of terms of the parties' entire agreement.

Specifically, the Seascape Letter Agreement provides that Seascape will repay the

November 29 Loan and in exchange, Fairway would:

> execute, among other things, (1) a UCC Financing
> Statement Amendment to terminate the UCC Financing
> Statement in favor of Fairway as secured party recorded
> in the Bureau of Conveyances of the State of Hawaii
> ("Bureau") as Document No. 2007-208967, (2) a Release
> of Mortgage in connection with its Mortgage,
> Assignment of Rents, Security Agreement and Fixture
> Filing which encumbers certain real property located in
> Kailua-Kona, Hawaii bearing Tax Map Key Nos. (3) 7-3-
> 010:052, 053 and 054 recorded in said Bureau as

> Document No. 2007-208966, and (3) a Release of
> Mortgage in connection with its unrecorded Mortgage,
> Assignment of Rents, Security Agreement and Fixture
> Filing covering certain real property located in Kailua-
> Kona, Hawaii bearing Tax Map Key No. (3) 7-3-
> 010:051.

Doc. No. 13-5, Ex. 2 at 2. Neither party disputes that they agreed to these terms,

and there is no evidence -- whether intrinsic or extrinsic -- suggesting that the

parties did not intend these terms to be the final expression of at least a portion of

the parties' entire agreement. Accordingly, the court finds that the Seascape Letter

Agreement is partially integrated as to these terms.

Given this partial integration, the court must now determine whether

Van Maren's extrinsic evidence that the parties agreed that performance under the

Sonny Ventures Letter Agreement must occur before Fairway was obligated to

release the December 3 Mortgage is (1) consistent with the written terms of the

Seascape Letter Agreement; and (2) either supported by separate consideration, or

would naturally be omitted from the writing. *See* Restatement (Second) of

Contracts § 216(2). If the answer is "no" to either of these inquiries, then the parol

evidence rule bars Fairway's extrinsic evidence.

As to the first inquiry, courts have split regarding the meaning of the

term "inconsistent." Some courts have defined the term narrowly, holding that

"[t]o be 'inconsistent' within the meaning of the partial integration doctrine, the

oral term must contradict an express provision in the writing." *Hatley v. Stafford*,

588 P.2d 603, 608-09 (Or. 1978); *see also Mich. Nat'l Bank of Detroit v.*

*Holland-Dozier-Holland Sound Studios*, 250 N.W.2d 532, 534 (Mich. App. 1976)

(stating that "inconsistent" as used in the Restatement (Second) of Contracts "is

intended to be synonymous with "contradictory").  Under this definition, it is not

enough if the additional term merely prevents the ripening of obligations expressed

in the written terms:

> In a sense any oral provision which would prevent the
> ripening of the obligations of a writing is inconsistent
> with the writing.  But that obviously is not the sense in
> which ["inconsistency"] is used.  To be inconsistent the
> term must contradict or negate a term of the writing.  A
> term or condition which has a lesser effect is provable.

*Hatley*, 588 P.2d at 609 (quoting *Hunt Foods & Indus., Inc. v. Doliner*, 270

N.Y.S.2d 937, 940 (1966); *see Carter Baron Drilling v. Badger Oil Corp*. 581 F.

Supp. 592, 597 n.13 (D. Colo. 1984) (discussing split regarding defining

"inconsistency" and adopting narrower definition in light of the purpose of the

U.C.C. and other cases using the narrower definition); 32A C.J.S. Evid. § 1588

("In the case of an incomplete writing, or a contract which is partially integrated,

the parts of the agreement proposed to be proved by parol must not be inconsistent

with, *or repugnant to*, the intention of the parties as shown by the written

instrument." (emphasis added)); *see also* 11 Williston on Contracts § 33:18, at 650

(4th ed. 1999) (stating that evidence of an oral condition is admissible if neither "repugnant to the conditions or terms actually stated in writing, nor offered in substitution for them").

In comparison, other courts have taken a broader view of "inconsistency," finding that it means "the absence of reasonable harmony in terms of the language *and* respective obligations of the parties." *See Alaska N. Dev. Inc. v. Alyeska Pipeline Serv. Co.*, 666 P.2d 33, 40 (Alaska 1983) (defining inconsistency as used in the U.C.C. § 2-202(b)); *Snyder v. Herbert Greenbaum & Assoc.*, 380 A.2d 618, 623 (Md. App. 1977) (adopting same definition); *see also Luria Bros. & Co., Inc. v. Pielet Bros. Scrap Iron & Metal, Inc.*, 600 F.2d 103, 111 (7th Cir. 1979) (rejecting definition in *Hunt Foods*).  This rule, of course, results in a more narrow application of the parol evidence rule to a partially integrated writing.

Although Hawaii courts have not spoken on this precise issue, the court believes that the Hawaii Supreme Court would adopt the narrower definition of "inconsistency" as consistent with its "liberal approach toward the receipt of extrinsic evidence . . . [to give] the courts a wider insight into the real intent of the parties." *See Cosmopolitan Fin. Corp. v. Runnels*, 2 Haw. App. 33, 38, 625 P.2d 390, 395 (1981) (citing *Hunt Foods* with approval).  Indeed, in interpreting Hawaii

U.C.C. law, *Nanakuli Paving & Rock Co. v. Shell Oil Co.*, 664 F.2d 772 (9th Cir. 1981), discussed both Hawaii's liberal approach to extrinsic evidence and *Hunt Foods* in ultimately allowing extrinsic evidence of trade usage to "qualify," as opposed to negate, the express terms of a written agreement. *Id.* at 800-05; *see also Assoc. of Apartment Owners of 1555 Pohaku v. Walker-Moody Constr. Co.*, 2 Haw. App. 285, 289, 630 P.2d 652, 655 (1981) (rejecting extrinsic evidence where it "contradicts specific unambiguous terms in the Settlement Agreement which the parties agree is the final expression of the agreement between the parties"). Accordingly, the court finds that the Hawaii Supreme Court would adopt the more-narrow definition of "inconsistency," meaning that to be "inconsistent," the oral term must contradict an express provision in the writing.

The additional requirement that the parties perform under the Sonny Ventures Letter Agreement before Fairway releases the December 3 Mortgage is not inconsistent with any written terms of the Seascape Letter Agreement. Indeed, if this oral term is included, Seascape must still pay off the November 29 Loan and Fairway must release the December 3 Mortgage. The extrinsic evidence simply inserts an additional requirement between these two events -- that the parties perform under the Sonny Ventures Letter Agreement before Fairway's release. *See also Hunt Foods*, 270 N.Y.S.2d at 940 (finding that despite the unconditional

language of an option to purchase stock, extrinsic evidence that the option would only be exercised if the party sought an outside offer was not inconsistent with the terms of the writing); *Hatley*, 588 P.2d at 608-09 (allowing extrinsic evidence of a time limitation on a written lease agreement's buy-out provision because "nothing is contained in the writing with respect to the duration of the buy out provision").

Contrary to Plaintiffs' assertions, requiring performance under the Sonny Ventures Letter Agreement before Fairway releases the Mortgage does not increase the consideration provided by Stevens and/or Stevens-related entities under the Seascape Letter Agreement. *See* Doc. No. 56-1, Pls.' Mot. 25. Performance under the Sonny Ventures Letter Agreement is supported by its own consideration -- Stevens and the Stevens Family LLLP will issue a guaranty to CTI Reno and pledge their membership interest in Oak Canyon Ranch LLC and in return, CTI will release Stevens from his guaranty to pay CTI Reno preferential limited distributional interest in Sonny Ventures. Doc. No. 20-7, Ex. G at 2. Accordingly, the extrinsic evidence Fairway seeks to offer suggesting that the parties must perform under the Sonny Ventures Letter Agreement before Fairway releases the Mortgage is not inconsistent with the written terms of the parties'

agreement.[8]

As to the next inquiry, the alleged oral agreement that performance under the Sonny Ventures Letter Agreement would occur before Fairway released the Mortgage is both supported by separate consideration and a term that under the circumstances might be naturally omitted from the writing. As to separate consideration, as explained above, the Sonny Ventures Letter Agreement is supported by bi-lateral consideration, and expressly provides that Stevens must execute the Revised Guaranty and Pledge within ten days.

As to when a term might be naturally omitted from the writing, the Restatement (Second) of Contracts § 216, Comment d explains in part:

> [T]here is no rule or policy penalizing a party merely because his mode of agreement does not seem natural to others. Even though the omission does not seem natural, evidence of the consistent additional terms is admissible unless the court finds that the writing was intended as a complete and exclusive statement of the terms of the agreement.

According to Fairway, the parties structured the letter agreements as separate agreements so that the Seascape Letter Agreement would not reference the

---

[8] Requiring performance under the Sonny Ventures Letter Agreement as an event triggering Fairway's obligation to release the December 3 Mortgage is akin to an oral condition, which is admissible. *See* Restatement (Second) of Contracts § 217 ("Where the parties to a written agreement agree orally that performance of the agreement is subject to the occurrence of a stated condition, the agreement is not integrated with respect to the oral condition.").

guarantees and/or liabilities to Fairway. Doc. No. 19-4, Van Maren July 14

Decl. ¶¶ 5, 9. Seascape apparently asked for this structure so that a potential

investor, Fischer, would not be aware of them. *Id.* Although Fischer asserts that

he was aware of Stevens' obligations to Van Maren, *see* Doc. No. 39-2, Fischer

Aug. 4, 2010 Decl. ¶ 14, it is an open question what Seascape told Fairway and

whether, under these circumstances, the parties might have naturally omitted

reference to the performance under the Sonny Ventures Letter Agreement. As

such, the parol evidence will not bar Fairway's evidence that the parties agreed to

perform under the Sonny Ventures Letter Agreement before Fairway released the

December 3 Mortgage.

In sum, if the court views the parties' agreement as limited to the

Seascape Letter Agreement, then the parol evidence rule still does not bar

Fairway's extrinsic evidence because the additional term that the parties perform

under the Sonny Ventures Letter Agreement before Fairway release the December

3 Mortgage is not inconsistent with the written terms of the Seascape Letter

Agreement and is supported by separate consideration and might have naturally

been excluded from the written agreement given the circumstances. Accordingly,

the court DENIES Plaintiffs' Motion for Summary Judgment seeking to bar

Fairway from presenting evidence outside of the Seascape Letter Agreement.

# V.  **CONCLUSION**

Based on the above, the court DENIES Plaintiffs' Second Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 23, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Seascape Development, LLC, et al. v. Fairway Capital, LLC*, Civ. No. 10-00301 JMS-RLP, Order Denying Plaintiffs' Second Motion for Summary Judgment